USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:7/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TONY PARRISH,

                    Plaintiff,

        -against-

SUMITOMO MITSUI FINANCE AND
LEASING COMPANY, LIMITED;
SUMITOMO MITSUI BANKING
CORPORATION; YASUHIRO MAEI;
YUJI ISHIHARA; KOICHI TANAKA;
UPUL GUNASEKERA; CECILE
LATOUCHE; JOHN DOES 1-10; JANE
DOES 1-10,

                    Defendants.

25-cv-4549 (MKV)

**OPINION AND ORDER GRANTING
MOTION TO COMPEL
ARBITRATION AND STAY ACTION**

MARY KAY VYSKOCIL, United States District Judge:

       Plaintiff Tony Parrish, proceeding *pro se*, brings this action against his former employer

Sumitomo Mitsui Finance and Leasing Company, Ltd ("SMFL"), Sumitomo Mitsui Banking

Corporation ("SMBC"), and its employees Yasuhiro Maei, Yuji Ishihara, Koichi Tanaka, Upul

Gunasekera, Cecile Latouche, and John and Jane Does 1-10 (collectively, "Defendants"). *See*

[ECF No. 23 (the "Am. Compl.")] ¶¶ 76-172. He alleges myriad of claims including: wrongful

termination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e)

*et seq.*, 42 U.S.C. §§ 1981; privacy violations and discrimination under the Americans with

Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, the Computer Fraud and Abuse Act (CFAA),

18 U.S.C. § 1030, the Stored Communications Act (SCA), 18 U.S.C. §§ 2701-2712, and the Health

Insurance Portability and Accountability Act (HIPAA); violations of the New York State Human

Rights Laws (NYSHRL) and New York City Human Rights Law (NYCHRL); Civil RICO claims

pursuant to 18 U.SC. § 1962; obstruction of justice in violation of 18 U.S.C. § 1512; and various

claims under New York law for defamation, fraud, intentional infliction of emotional distress,

retaliation, tortious interference, negligent hiring, retention, and supervision. *See generally* Am. Compl.

Defendants request that the Court dismiss, as facially frivolous, Plaintiff's claim for obstruction of justice pursuant to 18 U.S.C. § 1512 and move to compel arbitration of all other claims and stay this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 *et seq*. *See* [ECF No. 36 (the "Mot.")]. In support, Defendants filed a memorandum of law [ECF No. 37 (the "Mem.)"] and a Declaration of Robin Milberg [ECF No. 38 (the "Milberg Decl.")] with attached exhibits. Plaintiff has filed an opposition [ECF No. 41 (the "Opp.")] and a Declaration [ECF No. 39 (the "Parrish Decl.")], to which Defendants filed a reply [ECF No. 45 (the "Reply")] and a supplemental Declaration of Robin Milberg. [ECF No. 46 ("Milberg Supp. Decl.")]. Thereafter, Plaintiff filed a motion to strike arguments and new evidence that he claims Defendants raised improperly in their Reply, [ECF No. 47], which Defendants oppose. [ECF No. 48].

Plaintiff's motion to strike is DENIED and for the reasons discussed below, Defendants' motion is GRANTED and this action is STAYED pending arbitration.

## BACKGROUND

Sumitomo Mitsui Financial Group, Inc. ("SMFG") is a Tokyo-based financial holding company that oversees a global network of banking, leasing, securities, credit card, and consumer-finance businesses. Milberg Dec. ¶ 3. SMFL is an affiliate of SMFG and serves as one of its leasing and asset-finance arms. *Id*. ¶ 5. SMBC is SMFG's principal banking subsidiary with offices in North America. *Id*. ¶ 4. Plaintiff began his employment with the Credit Department of SMFL in March 2020 as a Director and Credit and Risk Manager. Am. Compl. ¶ 15. Before commencing his employment, Plaintiff was provided with an offer letter which laid out the terms and conditions of his employment. Parrish Decl. ¶ 4. Relevant here, the offer letter, among other

things, provided a dual modification clause which stated that "no provision of this letter agreement may be modified, waived, or discharged unless such . . . is agreed to in writing and signed by you and a designated officer of SMFL." Am. Compl., Ex. A [ECF No. 23-2 (the "Offer Letter")]. The Offer Letter did not contain any provisions regarding arbitration or any form of dispute resolution.

In November 2022, as a condition of continued employment, Plaintiff was presented with an electronic arbitration agreement. Am. Compl. ¶ 96; Milberg Supp. Decl. ¶ 3. The arbitration agreement provided that the "[e]mployee and SMBC agree that any suit, action, or other legal proceeding arising out of or relating in any way to Employee's employment with SMBC or termination of same shall be subject to binding private arbitration pursuant to the following procedures." Milberg Decl., Ex. A § 2 [ECF No. 38-1 (the ("Arbitration Agreement" or "Arb. Agreement")].[1] On November 28, 2022, Plaintiff "clicked through" the agreement and thereafter continued to work for SMFL until his termination on or about June 14, 2024. Am. Compl. ¶ 97; Milberg Supp. Decl. ¶ 3. In her detailed affidavit, Robin Milberg, the Chief Human Resources Officer for SMBC, precisely describes the process by which Plaintiff received notice of the Arbitration Agreement. Milberg Decl. ¶¶ 14-17. Specifically, Milberg avers that Plaintiff was provided the Arbitration Agreement through a secure electronic document internal platform, which allowed Plaintiff to open and review the agreement. Milberg Decl. ¶ 14. Before executing the agreement, Plaintiff had to acknowledge that he had "received, reviewed, and understood the Agreement and agreed to be bound by its terms." Milberg Decl. ¶¶ 15-16. Defendants' internal system log automatically recorded his acknowledgement and execution of his assent to the Arbitration Agreement when he "clicked-through" the electronic acknowledgement. Milberg

---

[1] Pursuant to the Arbitration Agreement, SMBC is defined to include, among other entities, SMFL. Arb. Agreement § 1.

Decl. ¶ 17; *see also* Milberg Decl., Ex. B [ECF No. 38-2] (record reflecting that Plaintiff "read" and clicked through the Arbitration Agreement).

Plaintiff initiated this action by filing a Complaint on May 30, 2025.  [ECF No. 1 (the "Compl.")].  On October 3, 2025, Plaintiff filed the operative amended complaint [ECF No. 23].  Before the Court is Defendants' fully briefed motion to compel arbitration and stay the action pending arbitration [ECF No. 36], and Plaintiff's motion to strike certain arguments and evidence in Defendants' Reply in connection with the motion to compel arbitration.  [ECF No. 47].

## LEGAL STANDARD

Under Section 2 of the Federal Arbitration Act, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." *Nicosia v. Amazon.com*, *Inc*., 834 F.3d 220, 228-29 (2d Cir. 2016) (quoting 9 U.S.C. § 2) (alterations in original).  The Act reflects "a national policy favoring arbitration" based on the "desire to preserve . . . parties' ability to agree to arbitrate, rather than litigate." *Doctor's Assocs*., *Inc*. v. *Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quoting *Schnabel v. Trilegiant Corp*., 697 F.3d 110, 118 (2d Cir. 2012)).  Accordingly, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc*., 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Dean Witter Reynolds*, *Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

Before compelling arbitration, a district court must determine two threshold issues: (1) whether the parties agreed to arbitrate, and (2) the scope of that agreement.  *See In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).  On the first threshold issue, the Second Circuit has instructed district courts to resolve "agreement-formation questions" by

"applying the law of the state at issue." *Barrows v. Brinker Restaurant Corporation*, 36 F.4th 45, 50 (2d Cir. 2022); *see also Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002) ("[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law.").  Once the existence of an agreement to arbitrate is established, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Kurmangaliyev v. Verizon Wireless Servs., LLC*, No. 25-cv-3749, 2026 WL 1266383, at *7 (E.D.N.Y. May 8, 2026) (citing *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022) (citation modified).

On the second threshold issue, "the court first asks, whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." *Ross v. Finzer*, No. 25-cv-1179 (DEH) (VF), 2025 WL 3860070, at *2 (S.D.N.Y. Oct. 8, 2025) (quoting *Citigroup Inc. v. Sayeg*, No. 21-cv-10413 (JPC), 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022)).  While the question of "whether the particular dispute is subject to an arbitration agreement is typically an issue for judicial determination," an exception to that general rule applies if the arbitration agreement "clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) (citation modified).  "[W]here the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability—constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318-19 (2d Cir. 2021).

When deciding motions to compel arbitration, courts "apply a standard similar to that for a motion for summary judgment" and consider "all relevant, admissible evidence submitted by the

parties and . . . draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (internal quotation marks omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).

Where, as here, a plaintiff is proceeding *pro se*, the Court "must take care to construe [his] papers liberally, in deference to [his] *pro se* status." *Brevard v. Credit Suisse*, No. 23-cv-428 (LJL), 2024 WL 36991, at *4 (S.D.N.Y. Jan. 3, 2024) (quoting *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011)); *see also Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir. 1988) (stating that courts should afford "special solicitude" to *pro se* litigants "confronted with motions for summary judgment"). The Court "therefore interprets [a *pro se*] Plaintiff's submissions to raise the strongest arguments that they suggest." *Brevard*, 2024 WL 36991 at *4 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)) (citation modified).

Ultimately, "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay [is] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

## DISCUSSION

### I. The Parties Entered into a Valid Agreement to Arbitrate

As an initial matter, the Court must ascertain under the governing state law, which here is New York law, whether the parties entered into an agreement to arbitrate.[2] *Brevard*, 2024 WL

---

[2] Defendants assert that New York law governs, and Plaintiff does not argue otherwise. *See* Mem. at 10; *see also Vincent v. Nat'l Debt Relief LLC*, No. 24-CV-440 (LJL), 2024 WL 3344227, at *5 n.3 (S.D.N.Y. July 8, 2024) (noting courts may presume application of the forum state's choice of law—New York—when no party argued otherwise). Further, Plaintiff's state law claims are all brought under New York law and he otherwise avers in his complaint that

36991, at *4 (S.D.N.Y. Jan. 3, 2024) (quoting *Credit Suisse AG v. Graham*, 533 F. Supp. 3d 122, 128 (S.D.N.Y. 2021)) (citation modified).  Plaintiff proffers several arguments that the Arbitration Agreement is invalid and not binding upon him, each of which the Courts find to be unpersuasive.

### A. Plaintiff Assented to the Arbitration Agreement

Despite conceding in his own complaint that he clicked through and acknowledged the binding Arbitration Agreement that was presented electronically as a condition of his continued employment, Plaintiff nonetheless argues that he never assented to the Arbitration Agreement. Specifically, he relies on his self-serving affidavit that he was never provided the Arbitration Agreement and thus never "executed it."  Opp. at 8-12; *see also* Parrish Decl. ¶¶ 11-27.

Courts applying New York law routinely enforce "clickwrap" agreements, which is akin to how the Arbitration Agreement was presented here,[3] so long as the agreement's terms and conditions were presented "in a clear and conspicuous way."  *Starke v. SquareTrade*, *Inc.*, 913 F.3d 279, 289 (2d Cir. 2019); *see also Teta v. Go New York Tours*, *Inc.*, 738 F. Supp. 3d 502, 509 (S.D.N.Y. 2024) (concluding that an arbitration agreement is binding where "plaintiffs were on reasonable notice of the terms and conditions and the arbitration agreement therein," and "had a sufficient opportunity to read the agreement and assented to the agreement by affirmatively clicking on the box"); *Lewis v. Samsung Electronics America*, *Inc.*, No. 22-CV-10882 (JLR), 2023 WL 7623670, at 7 (S.D.N.Y. Nov. 14, 2023) (finding agreement to arbitrate to be reasonably conspicuous and thus binding where a "Details" hyperlink was "associated with, and right below,

---

the acts underlying his complaint "occurred in whole or in part" in the Southern District of New York.  Am. Compl. ¶ 13.

[3] The Arbitration Agreement here is most analogous to a clickwrap or click-through agreement which is a web-based contract that "require[s] users to click an 'I agree' box after being presented" with the relevant contractual terms. *Meyer*, 868 F.3d at 75; *see also Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 47-48 & n.11 (E.D.N.Y. 2017) (describing clickwrap agreements as those requiring the click of a button declaring assent where the party is given sufficient opportunity to review the relevant agreement).

a statement that says: 'I agree to the Terms and Conditions, including the Arbitration Agreement'"); *Kai Peng*, 237 F. Supp. 3d at 50 (upholding a click-wrap agreement where Plaintiffs acknowledged that they clicked on the "YES, I AGREE" buttons and above each button stated that "[b]y clicking below, you represent that you have reviewed all the documents above and that you agree to all the contracts above").

Here that standard is readily met in light of Plaintiff's own allegations. Plaintiff alleges that "Defendants attempted to impose an arbitration agreement through a mandatory click-through login screen." Am. Compl. ¶ 96. He further alleges that "[he] clicked through solely to regain access to necessary work systems." Am. Compl. ¶ 97; *see also* Am. Compl. ¶¶ 17, 34, 72. Moreover, he specifically alleges that the Arbitration Agreement "was embedded in" the "mandatory click-through login." Am. Compl. ¶ 17. Thus, based on his own allegations, Plaintiff was plainly aware of and had access to the Arbitration Agreement, prior to agreeing to it by "clicking through." While he avers to the contrary in his affidavit, those self-serving denials fail to raise a dispute of fact given they are directly contradicted by his own affirmative allegations in his complaint. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014) ("[P]laintiffs may not create material issues of fact by submitting affidavits that dispute their own prior testimony.").

But more importantly, Plaintiff fails to raise any argument as to why the Court should question the factual accuracy of the detailed Milberg Declaration concerning his receipt and execution of the Arbitration Agreement. *See Palmer v. Starbucks, Corp.*, 735 F. Supp. 3d 407, 418 (S.D.N.Y. 2024) (accepting detailed affidavit from HR employee that Plaintiff failed to rebut). Milberg avers that prior to "clicking through," Plaintiff was provided access to the Arbitration Agreement through an internal platform and was presented with an electronic acknowledgement

that he had to accept with a click that stated: "I acknowledge the receipt of this Mutual Arbitration Agreement and that I have read and understood it. I agree to the terms and conditions thereof." Milberg Decl. at ¶¶ 14, 15.  By proceeding, Plaintiff confirmed that he had received, reviewed, and understood the Agreement and SMFL's system created a record of his assent.  *Id.* ¶¶ 16-17.

Plaintiff does not contest these aspects of the Milberg Declaration and instead narrowly focuses on Exhibit B to her declaration, which reflects that Defendants' internal system log automatically recorded Plaintiff as having read the Arbitration Agreement and clicked-through to accept its terms on November 28, 2022.  Milberg Decl., Ex. B.  Plaintiff attempts to argue that Exhibit B of the Milberg Declaration is insufficient because it is "a static image with no metadata, audit trail, user-ID information, or system logs" which fails to establish "what was displayed . . . or whether any action constituting assent occurred."  Opp. at 8.  However, at this stage, the burden falls on Plaintiff to "demonstrate[e] a 'substantial issue'" on the existence of an agreement to arbitrate.  *Palmer*, 735 F. Supp. 3d at 418 (citation omitted).  Exhibit B simply reflects SMFL's internal system log reflecting what Plaintiff has repeatedly conceded in his own Amended Complaint—that he clicked through the agreement.  *See* Reply at 12-13.  Furthermore, Plaintiff does not provide any support for the contention that Defendants are required to produce metadata or system files to establish the veracity of the document where there is unrebutted sworn testimony establishing how it was created.  Plaintiff's objections regarding the format of the internal SMFL HR system is insufficient to create a genuine dispute of fact.[4]  *See Palmer*, 735 F. Supp. 3d at 419 ("[Plaintiff] presents no reason to question the integrity or accuracy of any of the detailed

---

[4] Plaintiff also unpersuasively points to an error in the Milberg Declaration stating that he executed the Agreement on November 28, 2024, which came after his termination.  *See* Milberg Decl. ¶ 13; *see also* Opp. at 8-9.  However, as noted in the Milberg Supplemental Declaration, this was an inadvertent scrivener's error.  *See* Milberg Supp. Decl. ¶¶ 2-3. Exhibit B to the Milberg Declaration clearly shows that Plaintiff assented to the Arbitration Agreement on November 28, 2022, which was during his employment.  *See* Milberg Decl., Ex. B.

information in the Daly Affidavit regarding the employee application and onboarding process[.]"). Under these circumstances, Plaintiff's decision to "click-through" constitutes valid assent under New York law. *See, e.g.*, *Kai Peng*, 237 F. Supp. 3d at 50; *Meyer*, 868 F.3d at 75-76 ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 164-65 (E.D.N.Y. 2012) (noting that under New York law a party is obligated to read a document and cannot avoid binding effects of its terms by claiming to have not read it); *Starke v. Gilt Groupe, Inc.*, No. 13-cv-5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (noting that "[f]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract") (citation omitted); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-41 (S.D.N.Y. 2012).

### B. The 2020 Offer Letter Does Not Invalidate the Arbitration Agreement

Plaintiff separately contends that the Arbitration Agreement is invalid because it improperly modified the 2020 Offer Letter signed by both parties when Plaintiff first began his employment. *See* Opp. at 5-7. Specifically, Plaintiff points to the provisions in the Offer Letter which state that "[n]o provision of this letter agreement may be modified, waived, or discharged unless such waiver, modification, or discharged is agreed to in writing and signed by you and a designated officer of SMFL," and that "[t]his letter agreement sets forth the entire agreement of the parties  with respect to the subject matter contained herein and supersedes any and all prior agreements, representations, promises, or understandings, written or oral, express or implied, between you and SMFL . . . ." Offer Letter at 4.

But this argument too fails. As Defendants rightly point out, Plaintiff's argument presupposes a modification that does not exist. Reply at 5-6. The Offer Letter does not address

10

any issues related to dispute-resolution, but rather addresses other terms and conditions of Plaintiff's employment including its "at-will" nature, Plaintiff's compensation, and background checks, among other conditions. Thus, the Arbitration Agreement does not modify any terms governed by the Offer Letter. This conclusion is reinforced by the Arbitration Agreement itself, which provides that "neither this Arbitration Agreement nor anything herein changes the at-will status or any other term of condition of Employee's employment with SMBC." Arb. Agreement § 2(j). Since the Arbitration Agreement does not purport to modify the Offer Letter, Plaintiff's argument that the Arbitration Agreement is invalid on this basis fails.

Further, even if the Arbitration Agreement were deemed a modification, it was proper given that both parties plainly assented it. As discussed, Plaintiff assented to the Arbitration Agreement by accepting the terms presented to him and continuing to work with Defendants. For their part, Defendants obviously assented to the Arbitration Agreement through their conduct even if they did not explicitly sign the agreement, which is sufficient to modify a contract under New York law. *See Pankiv v. Richmond Ctr. for Rehab. & Specialty Healthcare*, 188 A.D.3d 712, 713, 131 N.Y.S.3d 598 (2d Dep't 2020) ("The manifestation of expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract.") (citation omitted)*; see also Karel v. Clark*, 129 A.D.2d 773, 514 N.Y.S.2d 766 (2d Dep't 1987) ("The fact that the original agreement requires that amendments or modifications be signed by *all* of the parties to the original agreement is not dispositive if the evidence, taken as a whole, shows that the amendment was authentic or was otherwise ratified by the parties' conduct.") (emphasis in original). Defendants clearly assented to their agreement given that they generated and proffered the Arbitration Agreement and sought Plaintiff's acceptance in order to continue employment. *See* Reply at 9; *see also* Arb. Agreement § 2 ("Both Employee and SMBC

11

acknowledge that (a) arbitration as set forth below shall be the sole and exclusive means of resolving any claims between Employee and SMBC arising out of or relating to Employee's employment with SMBC or termination of the same . . .").  Thus, both Defendants and Plaintiff acted in a manner demonstrating acceptance of the Arbitration Agreement and Plaintiff's argument concerning invalid modification is unavailing.  *See God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc., LLP*, 6 N.Y.3d 371, 373-74, 812 N.Y.S.2d 435, 845 N.E.2d 1265 (affirming "long-standing rule that an arbitration clause in a written agreement is enforceable, even if the agreement is not signed, when it is evident that the parties intended to be bound by the contract"); *see also Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 35 N.Y.2d 291, 299, 319 N.E.2d 408 (1974).

## II. The Arbitration Agreement Reserves Arbitrability Questions to the Arbitrator

As discussed above, broad language in an arbitration agreement reflecting an intent to arbitrate *all* disputes, coupled with the incorporation of rules empowering an arbitrator to decide issues of arbitrability, constitutes clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.  *See DDK Hotels*, 6 F.4th at 318-19.  Here, this standard is met because the Arbitration Agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator.

First, the Arbitration Agreement delegation is broad and plainly manifests an intent to arbitrate all aspects of all disputes.  The Arbitration Agreement provides that "any suit, action, or other legal proceeding arising out of or relating in any way to Employee's employment with SMBC or termination of same shall be subject to binding private arbitration" and that any "claims" or "disputes" arising out of Plaintiff's employment with Defendants is subject to arbitration.  Arb. Agreement § 2.  *See Wells Fargo Advisors*, *LLC v. Sappington*, 884 F.3d 392, 394-96 (2d Cir.

2018) (finding that a clause expressing agreement "to arbitrate any dispute, claim or controversy that may arise between you and Wells Fargo Advisors, or a client,  or any other person[, and] . . . giving up the right to sue Wells Fargo Advisors . . . in court concerning matters related to or arising from your employment" demonstrated "the parties' clear and unmistakable intent to arbitrate all questions of arbitrability.").

Second, the arbitration agreement itself expressly provides that "the arbitrator—and not a court or agency—shall have the exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Arbitration Agreement, including but not limited to, any claim that all or any part of this Arbitration Agreement is void or voidable."  Arb Agreement § 2.  Moreover, the Arbitration Agreement incorporates the JAMS Employment Arbitration Rules & Procedures ("JAMS Rules").  *See* Arb. Agreement § 2(a) ("The arbitration shall be administered by JAMS, in accordance with JAMS's then-current Employment Arbitration Rules & Procedures.").  Those rules independently provide that the arbitrator shall decide issues of arbitrability.  *See* JAMS Employment Arbitration Rules & Procedures, Rule 11(b) (effective June 2021) (providing that "arbitrability disputes, including disputes over the formation, existence, validity, interpretation or *scope* of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator") (emphasis added).  Incorporation of these rules is further evidence that the Arbitration Agreement clearly and unmistakably evinces an intent to delegate arbitrability to the arbitrator.  *See Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (concluding that "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator" by incorporating the JAMS Rules); *Parrella v. Orange Rabbit*, *Inc.*, No. 20-cv-9923 (RA), 2021 WL 4462809, at *9 (S.D.N.Y. Sept. 29, 2021) ("[T]he decision to incorporate the JAMS rules evinces a clear and unmistakable intention to delegate arbitrability

13

determinations to an arbitrator.") (citation omitted). Accordingly, because the Arbitration Agreement clearly and unmistakably delegates the question of arbitrability to the arbitrator, the Court defers to the arbitrator on the issue of whether Plaintiff's claims asserted in this case fall within the scope of the Arbitration Agreement. *See* Arb Agreement §§ 2, 2(a).

In any event, the Court notes that in his opposition, Plaintiff, while maintaining his challenge to the validity of the Arbitration Agreement, otherwise concedes that his claims are within the scope of the Arbitration Agreement. Opp. at 7 n. 2 ("Plaintiff does not contend that his claims fall outside the scope of a valid arbitration agreement.").

### III. Dismissal of Plaintiff's Obstruction of Justice Claim Under 18 U.S.C. § 1512

Defendants also argue that the Court should dismiss Plaintiff's standalone claim for obstruction of justice under 18 U.S.C. § 1512, which is a federal criminal statute. *See* Am. Compl. ¶¶ 110-117. Despite plainly asserting a cause of action under 18 U.S.C. § 1512, Plaintiff appears to abandon it in his opposition and argues that he does not intend to assert a claim under that criminal statute. Opp. at 17.

The Second Circuit has made clear that a court must examine "with care the complaints seeking to invoke [their] jurisdiction in order to separate arbitrable from nonarbitrable claims." *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (per curiam)). Moreover, in the absence of subject matter jurisdiction over a claim, a court cannot refer that claim to arbitration. *Id.* at 426; *see also Deng v. Frequency Electronics, Inc.*, 640 F. Supp. 3d 255, 267 (E.D.N.Y. 2022) ("[I]t seems axiomatic that if the Court lacks subject matter jurisdiction over a claim, it cannot refer that claim to arbitration.").

Here, as Plaintiff recognizes, 18 U.S.C. § 1512 is a criminal statute that provides no private right of action. *See Shukla v. Deloitte Consulting LLP*, No. 19-cv-10578 (AJN) (SDA), 2020 WL

14

3181785, at *15 (S.D.N.Y. June 15, 2020); *Torres v. Blackstone Group*, No. 18-cv-6434 (RA), 2019 WL 4194496, at *3 (S.D.N.Y. Sept. 3, 2019) (noting that 18 U.S.C. § 1512 does not "provide a private right of action"). Thus, Plaintiff lacks standing to raise any civil claims under that criminal statute. *See Hariprasad v. Master Holdings Inc.*, 788 F. App'x 783, 786 (2d Cir. 2019); *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 306-07 (2d Cir. 2000) ("[Plaintiff], as a private citizen, had 'no standing to prosecute criminal actions in federal court.'"); *Caron v. TD Ameritrade*, No. 19-cv-9015 (AJN), 2020 WL 7027593, at *3-4 (S.D.N.Y. Nov. 30, 2020) (dismissing claims under various federal criminal statutes and noting that "[a]s a private individual, Plaintiff does not have standing to enforce the criminal laws of the United States" that do not afford private rights of action); *Graham v. Yazdani*, No. 14-cv-6020 (PKC), 2014 WL 5506719, at *1 (E.D.N.Y. Oct. 31, 2014) (dismissing claims under federal criminals statutes that did not provide for private right of action for lack of standing).

Accordingly, Plaintiff's claim for obstruction of justice under 18 U.S.C. § 1512 is dismissed for lack of jurisdiction.

## IV. Plaintiff's Motion to Strike

In response to Defendants' motion to compel, Plaintiff has moved to strike or disregard certain arguments and new evidence raised in Defendants' Reply. [ECF No. 47 (the "Mot. to Strike")]. Plaintiff alleges that, rather than responding to the arguments made in his Opposition, Defendants advance "new legal theories, new statutory grounds, new evidentiary narratives, and new factual testimony," that "effectively replac[es] their original motion." Mot. to Strike, Ex. A. at 1. Defendants filed a reply opposing the motion. [ECF No. 48 (the "D. Reply")].

As an initial matter, "[t]he party moving to strike carries a heavy burden, as court[s] generally disfavor motions to strike." *Schneidermesser v. NYU Grossman School of Medicine*,

15

No. 21-cv-7179 (DEH), 2024 WL 4054372, at *1 (S.D.N.Y. Sept. 5, 2024) (quoting *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 334 (E.D.N.Y. 2014)). Additionally, in determining a motion to strike, the court will "resolve all doubts in favor of denying the motion." *Schneidermesser*, 2024 WL 4054372, at *1.   Given this demanding standard, the Court is unpersuaded by Plaintiff's argument.

Plaintiff's Opposition did not merely contest the arguments raised in Defendants' Motion to Compel, but rather it introduced new arguments as to why his assent to the Arbitration Agreement was invalid—including that the agreement should be treated as a modification to the Offer Letter—that Defendants' Reply properly addressed.[5]  Contrary to Plaintiff's argument, such responsive analysis is routinely permitted as courts in this Circuit recognize that "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016) (quoting *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013)); *see also Toure v. Cent. Parking Sys. Of N.Y.*, No. 05-cv-5237, 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007) (denying a motion to strike new evidence submitted with a reply when the reply did "not raise new arguments, but rather respond[ed] to issues raised in opposition or amplify[ied] points already made on the initial motion").  Plaintiff cannot inject new assertions and then bar the Defendants from addressing them.

Plaintiff also seeks to strike the Supplemental Declaration of Robin Milberg, characterizing it as improper new evidence.  That argument grossly overstates the scope of the Supplemental

---

[5] Although Defendants appear to raise the issue of delegation of arbitrability for the first time in their Reply, the Second Circuit has made clear that the Court nonetheless has an affirmative duty to determine whether or not the parties agreed to delegate questions of arbitrability to the arbitrator. *See Melendez v. Ethical Culture Fieldston School*, 789 F. Supp. 3d. 316, 326-27 (S.D.N.Y. 2025); *In re American Exp.*, 672 F.3d at 128 ("[W]e must also determine who—the court or the arbitrator—properly decides the issue" of delegation).

Declaration which was simply to correct a scrivener's error in her original declaration regarding the correct year of Plaintiff's acceptance of the Arbitration Agreement. In the original Milberg Declaration, she mistakenly avers that Plaintiff accepted the Arbitration Agreement on November 28, 2024, despite the fact that the record exhibit in support, as well as common sense, indicated it occurred on November 28, 2022. *Compare* Milberg Decl., Ex. B *with* Milberg Decl. ¶ 13. The Supplemental Declaration simply clarified the record to eliminate any inconsistency. Milberg Supp. Decl. ¶¶ 1-3.

Accordingly, Plaintiff's motion to strike is DENIED in full. Plaintiff's attempt to bar Defendants from responding to the arguments he raised in the first instance would completely upend motion practice and force Defendants to anticipate or guess at every conceivable legal framework an opponent might later assert. *See Zirogiannis*, 221 F. Supp. 3d at 298-99; *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 23 (E.D.N.Y. 2023).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike or disregard purportedly improper new arguments and evidence is DENIED, Defendants' motion to dismiss Plaintiff's obstruction of justice claim under 18 U.S.C. § 1512 is GRANTED, Defendants' motion to compel arbitration of all other claims is GRANTED, and the case is STAYED pending the resolution of arbitration. The Parties are directed to file a letter updating the Court on the outcome of the arbitration within three business days of its completion.

The Clerk of Court respectfully is requested to terminate the motions at ECF No. 36 and 47.

**SO ORDERED.**

**Date:  July 28, 2026**                                                     **MARY KAY VYSKOCIL**
      **New York, NY**                                        **United States District Judge**

17